Case No. 24-658

**United States Court of Appeals
for the Ninth Circuit**

| | |
|---|---|
| United States of America,<br><br>    Respondent-Appellant,<br><br>v.<br><br>Michael Mirando,<br><br>    Petitioner-Appellant. | D.C. Nos.: 2:16-cr-00215-PA-1<br>     2:23-cv-04498-PA<br>[Central District of California]<br><br>Appellant Michael Mirando's Motion for Certificate of Appealability |

  Petitioner-Appellant Michael Mirando (Mr. Mirando) moves this Court to grant a certificate of appealability (COA) pursuant to 28 U.S.C. § 2253(c)(2) and Ninth Circuit Rule 22-1 permitting appeal from the district court's order denying Mirando's 28 U.S.C. § 2255 motion. Dist. Dkt. 201, 16. This honorable Court should grant a COA as to all claims raised by Mr. Mirando in his petition for Writ of Habeas Corpus so that he may appeal the district court's decision.

  Mr. Mirando is entitled to a COA for these claims because, as set forth in his attached memorandum, he "he "[makes] a substantial showing of the denial of [several] constitutional right[s]." 28 U.S.C. § 2253(c)(2)."

              Respectfully submitted,

              By *Michael Devereux*

                Michael Devereux
                9440 Santa Monica Boulevard
                Suite 301
                Beverly Hills, California 90210
                mike@wex.law

Case No. 24-658

| | |
|---|---|
| United States of America,<br><br>    Respondent-Appellant,<br><br>v.<br><br>Michael Mirando,<br><br>    Petitioner-Appellant. | D.C. Nos.: 2:16-cr-00215-PA-1<br>    2:23-cv-04498-PA<br>[Central District of California]<br><br>Appellant Michael Mirando's Motion for Certificate of Appealability |

**United States Court of Appeals
for the Ninth Circuit**

**Memorandum in Support**

**Introduction.**

The district court denied habeas relief to Appellant Michael Mirando (Mr. Mirando). The court specifically denied a COA on all of Mr. Mirando's claims. Dist. Dkt. (CR) 201, (CV) 16.

Mr. Mirando requests that this Court issue a COA for all claims raised in his habeas petition. A COA is appropriate because reasonable jurists could find the district court's dismissal of the claims to be debatable.

**History of the Case.**

Mr. Mirando was indicted on April 5, 2016, and first appeared on or about

1

October 21, 2016. Mr. Mirando was arraigned on or about October 24, 2016 with trial initially set for December 13, 2016. On November 17, 2016 the parties stipulated to a trial date of April 25, 2017. Trial started April 25, 2017 and ran through May 2, 2017 in which Mr. Mirando was convicted. Judgment was dated October 30, 2017. The matter was appealed, Case No.: 17-50386. The Court affirmed the conviction and remanded for sentencing. The matter was appealed again, Case No.: 19-50384, and affirmed. USSC cert was denied on June 6, 2022.

**Relationship between Trial counsel, Expert and Mr. Mirando**

On or about January 27, 2017, trial counsel presented the defendant with an expert witness. The expert was soon retained before the end of January. The discovery was voluminous, over 60 pages. The expert received final payment in late March / early April. The expert led the defendant to believe that he was still testifying as late as April 12, 2017.

Trial counsel told the defendant that the expert witness was not available to testify because he wasn't paid in full. The defendant disputed such and showed trial counsel that the expert had been paid in full.

At no point, did trial counsel ask for a continuance. At no point, did trial counsel request funds for the expert witness. Although the expert was retained and fully paid for, at no point, did trial counsel notify the court and/or the government that a defense expert had been retained. The expert did not testify to the surprise of the expert and Mr. Mirando.

2

Trial counsel appeared unprepared and appeared to run through the trial in the minimal time possible. Trial counsel had been paid six figures for his retainer, that did not include the expert fees.

During trial, the defendant expressed a desire to testify, but the trial counsel rejected the request.

**This Court has jurisdiction to issue a Certificate of Appealability to Mr. Mirando.**

This Court has jurisdiction to issue this COA under 28 U.S.C. § 1291 and § 2253. *See also* Fed. R. App. P. 22(b); Article III, United States Constitution. Pursuant to 28 U.S.C. § 2253(c)(l)(A), a COA must issue before an appeal may be taken to the court of appeals. *See also* Fed. R. App. P. 22(b).

Indeed, the federal appellate rules indicate that an appellant must first request a COA in the district court. Fed. R. App. P. 22(b). However, in this case, the district court denied a COA on all of the issues raised in Mr. Mirando's habeas petition. This Court has jurisdiction to issue this certificate of appealability under 28 U.S.C. §§ 1291 and 2253. *See also* Fed. R. App. P. 22(b); U.S. Const. Art. III.

**Mr. Mirando must demonstrate a substantial showing of the denial of a constitutional right.**

The Supreme Court reiterated the standard for granting a COA in *Miller-El v. Cockrell*, 537 U.S. 322 (2003). The Court determined that, when evaluating the request for a COA, the court "should limit its examination to a threshold inquiry into the underlying merit of [the] claims." *Id*. at 327 (citing *Slack v. McDaniel*, 529 U.S.

3

473, 481 (2000)).

> [W]e reiterate that a prisoner seeking a COA need only demonstrate a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. *Id.*

While the COA determination under § 2253(c) requires an overview of the habeas claims and a general assessment of their merits, it "does not require full consideration of the factual or legal bases adduced in support of the claims." *Miller-El,* 537 U.S. at 336. Thus, the district court's final decision on the merits of the claims is not determinative of their appealability. "[A] COA determination is a separate proceeding, one distinct from the underlying merits... .The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 342.

A COA does not require a showing that the appeal will succeed. "Accordingly, a court of appeals should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief." *Id.* The petitioner "has already failed in that endeavor." *Id.* (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893, n.4. A petitioner must show only that the claim is debatable among reasonable jurists, not that some jurists might grant the petition for habeas relief. *Miller-El,* 537 U.S. at 338.

**The standard for issuing a COA is "lenient."**

To appeal a final order in a § 2255 proceeding, a petitioner must first obtain a COA. 28 U.S.C. § 2253(c)(1). The standard for acquiring a COA "is lenient" and "permissive." *Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010) (en banc), *overruled on other grounds by Swarthout v. Cooke*, 562 U.S. 216 (2011); *Runningeagle v. Ryan*, 825 F.3d 970, 983 n.14 (9th Cir. 2016). Mr. Mirando need only "facially allege[] the denial of a constitutional right." *Lambright v. Stewart*, 220 F.3d 1022, 1028 (9th Cir. 2000) (alteration added). Mr. Mirando need not demonstrate his appeal will likely succeed. *Welch v. United States*, 136 S. Ct. 1257, 1263-64 (2016). In fact, the Court is forbidden by statute from conducting a full review of the factual or legal bases adduced in support of the claim. *Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003).

Rather, the standard is met when reasonable jurists could debate whether the motion should have been resolved differently. *Welch*, 136 S. Ct. at 1263. A petitioner need not prove jurists would grant the motion and "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Miller-El*, 537 U.S. at 338. If "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further," a COA is warranted. *Runningeagle*, 825 F.3d at 983 n.14. In other words, a COA must issue

5

if the appeal presents a question that: (1) is debatable among jurists of reason; (2) a court could resolve it in a different manner; or (3) is adequate to deserve encouragement to proceed further. *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983).

"The fact that another circuit ha[s] decided the issues in a different manner . . . render[s] a seemingly well-established issue in [the] circuit debatable." *Lambright v. Stewart*, 220 F.3d 1022, 1026 (9th Cir. 2000). "[I]it is thus clear that we should not deny a petitioner an opportunity to persuade us through full briefing and argument to reconsider circuit law that apparently forecloses relief." *Id.*

**Claim 1: Mr. Mirando is entitled to habeas relief because his trial attorney was ineffective. U.S. Const. amends. VI and XIV.**

It appears that in many instances, trial counsel was unprepared throughout trial. It appears that the entire basis of the defense was cross-examination, despite the fact that the defense had much more to its case.

For example, it appears that trial counsel refused or failed to designate the expert witness so at the last moment the trial counsel refused to use the expert. About six months later, the expert produced his report at the sentencing hearing. At sentencing, it was duly noted, that the trial phase was complete so the purpose of the expert report was to discuss the loss for sentencing purposes only.

However, as explained in the writ for habeas the expert report did contain information that would have benefitted the defendant and show the government's bias in their investigation process. For instance, in the experts final report, produced many months after the trial, the expert summarizes the issues erroneous within the government's case, including but not limited to exculpatory evidence that was not presented on behalf of Mr. Mirando at trial. For example:

1. The Government's methodologies do not form the basis for a statistically valid method to extrapolate to over $7 million in fraudulent bills and $2 million in fraudulent receipts and results in a 19% certainty level regarding total fraud rather than the industry standard of 51% reasonable degree of certainty;

2. Duplicate charges are overstated. There are 90 actual duplicates which could be fraud or could be simply duplicate requests for payment. There are over 31,000 claims and a small percentage of these claims are 'adjacent' to each other by date of service;

3. There were no audits conducted by any insurance company that confirmed the existence of fraud;

4. It appears inconclusive which device was used to perform alleged fraudulent 'unable to perform' procedures;

5. Based on the information available to me (the expert), it could not be determined if Mr. Mirando or others submitted the insurance claims produced by the Government;

6. Since the suspect and duplicate claims are unproven in the expert's opinion to be fraud, $2,587,360.23 for these amounts, minus $1,339.180.04 in unpaid claims as an offset, minus $538,515.73 in unproven duplicates, minus $2,574,940 for unable to perform procedures, plus the accurate fraud counts mathematical total of $10,695.06 equals a negative number of ($1,854,580.95) which means that subject to further audits, the payors (health insurance firms) in this case may owe Holter Labs for unpaid claims;

7. Of over 40,000 documents produced by the Government, a single page states that the Government interviewed a witness who stated that the Datrix 512 could not possibly perform some of the medical diagnostic procedures in question due to its frequency. FDA 510(k) filings do not confirm that this is true as other devices with the same frequency are indeed used to perform these procedures;

8. According to the American Medical Association, there are 14 steps involved in delivering care which would be used to determine the veracity or fraudulent nature of any claim. The Government methodology only

8

sheds light onto partial information for four (4) of these fourteen (14) steps;

Accordingly, in the expert's opinion the net damages were zero **"mathematically a negative number with may indicate that the payors [health insurance firms] owe money for unpaid claims."** What the expert derived at is that there was an underpayment to the defendant, that Mr. Mirando didn't wasn't overcharging, but rather submitting duplicate invoices because the insurance companies were not paying, thus fraud wasn't committed. **By not using the expert and his report Mr. Mirando was denied a constitutional right because that witness was substantial to the defense to the fraud.**

*Yet the expert was never used, because the trial counsel failed or refused to disclosed the expert to the court or the government. Moreover, the trial counsel never asked for a continuance when he knew that he wasn't going to be ready for trial in April.*

Arguendo, if Trial Counsel honestly believed the claim that the expert was not paid such an excuse is deficient as defined in "The Defense Function" in the ABA Standards for Criminal Justice. (the "Standard") It was important to have the expert report for the reasons stated in the opening brief.

Standard 4-4.1 Duty to Investigate and Engage Investigators

Standard 4-4.1(e) clearly states:

9

(e) If the client lacks sufficient resources to pay for necessary investigation, counsel should seek resources from the court, the government, or donors. Application to the court should be made ex parte if appropriate to protect the client's confidentiality. Publicly funded defense offices should advocate for resources sufficient to fund such investigative expert services on a regular basis. If adequate investigative funding is not provided, counsel may advise the court that the lack of resources for investigation may render legal representation ineffective.

In another instance, the trial counsel refused to speak with the software engineer who programmed the device to get the readings that the government insisted the device could not do. In his response to the writ of habeas relief, the trial counsel claimed that he did not use the software engineer because the software engineer was involved in some sort of crime.

That reasoning was dubious at best. To the best of anyone's knowledge, the software engineer was not involved in any criminal activity and would have made a great witness for the defense. To the best of the defendant's knowledge, the software engineer was not contacted. Accordingly, the software engineer would have provided exculpatory information on these charges, in addition to, proving that the government's case couldn't be trusted. **By not using the software**

10

**engineer Mr. Mirando was denied a constitutional right because that witness was substantial to the defense.**

**Claim 2: Mr. Mirando is entitled to habeas relief because his trial attorney wouldn't allow him to take the stand. U.S. Const. amends. V and VI.**

Mr. Mirando claims that he was strong armed in not to testify, clearly not only a constitutional violation, but also in direct violation of the Standard.

Standard 4-5.2 Control and Direction of the Case

(a) Certain decisions relating to the conduct of the case are for the accused; others are for trial counsel. Determining whether a decision is ultimately to be made by the client or by counsel is highly contextual, and counsel should give great weight to strongly held views of a competent client regarding decisions of all kinds.

(b) The decisions ultimately to be made by a competent client, after full consultation with trial counsel, include: ….

(vi) whether to testify in his or her own behalf;

Juries size up defendants at trial. The jury is judging the defendant and one of the major issues is whether or not the jury would feel safe in acquitting the defendant. Many prosecutors theorize that trial counsels shouldn't put their

11

clients on the stand because the prosecutor could attack their record. Here, Mr. Mirando didn't have a criminal history.

Many successful trial counsels realize that their clients are being sized up and if there any negative expectations, the defense would take the wind out of the sail, so to speak by introducing the negative items themselves. Jurors tend to respect honesty. Accordingly, it should be left to the defendant to determine if they feel comfortable in testifying.

Here by denying Mr. Mirando the opportunity to testify, Mr. Mirando could not explain the reasoning behind the conduct. Mr. Mirando was informed and believed through the software engineer that the hardware could do what the government claim that it couldn't do. The software engineer would have corroborate Mr. Mirando's testimony.

In addition, Mr. Mirando likely would have testified that he was taught that his billing procedures was standard practice so he didn't believe that he was defrauding anyone. The expert report would have corroborated that testimony.

**Mr. Mirando was denied a constitutional right because his testimony was substantial to his defense.**

Conclusion

Had trial counsel been effective and if he permitted Mr. Mirando to testify, then the argument that the government's witnesses were not credible would have

12

been compelling. It would have been the central theme of the closing argument. Trial counsel told the jury the witnesses were not credible, but gave the jury virtually no reason doubt their credibility. Trial counsel had the means to do so at his disposal, but inexplicably failed to use it. Trial counsel failed in his duty to effectively represent Mr. Mirando.

**Certificate of Compliance**

The foregoing Motion does not exceed 20 pages. Cir. R. 27-1(1)(d).

Dated: March 7, 2024

Respectfully submitted,

By *Michael Devereux*

Michael Devereux
9440 Santa Monica Boulevard
Suite 301
Beverly Hills, California 90210
mike@wex.law

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form15instructions.pdf

**9th Cir. Case Number(s)** | 24-658

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

Michael Mirando / mike@mirandofamily.com

**Description of Document(s)** *(required for all documents)*:

Appellant Michael Mirando's Motion for Certificate of Appealability

**Signature** | s/ Michael Devereux | **Date** | Mar 7, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

Form 15 | Rev. 12/01/2018